IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAYVON HILL, | ) | Case No. 1:22-CV-02083-SL |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| DOUGLAS FENDER, WARDEN | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.    INTRODUCTION

Petitioner, Rayvon Hill ("Mr. Hill"), seeks a writ of habeas corpus under 28 U.S.C. §
2254. (ECF No. 1). Mr. Hill is serving a sentence of 20 years to life after being convicted of
murder, involuntary manslaughter, felonious assault, aggravated riot, and having weapons
while under disability.

Mr. Hill asserts a single ground for relief.  *Id.* Respondent, Warden Douglas Fender
("Warden"), filed an answer/return of writ on March 16, 2023. (ECF No. 6).  Mr. Hill filed a
traverse on June 16, 2023. (ECF No. 8). This matter was referred to me on December 12,
2022, under Local Rule 72.2, to prepare a report and recommendation on Mr. Hill's petition.
(ECF No. 3). For the foregoing reasons, I recommend that Mr. Hill's petition be DISMISSED
and/or DENIED. I further recommend that this Court not grant Mr. Hill a certificate of
appealability.

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings
of fact are presumed correct and can be contravened only if the habeas petitioner shows, by

clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d

524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by

a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio

Court of Appeals for the Eighth Appellate District summarized the facts as follows:

{¶ 2}  Appellant, along with his codefendants James Harrison ("Harrison") and Antonio Tyler ("Tyler"), were accused of shooting and killing Mattayo Heard ("Heard") in the lot of an apartment complex located in Cleveland, Ohio. The shooting occurred as the result of a fight that had broken out among a large number of people. The evidence adduced at trial showed the following people were present:

* Charmayne Gainer, a resident of the apartment complex and sister of appellant;

* Appellant, who was visiting Charmayne, at the apartment complex;

* Chauntrice Hill ("Chauntrice"), sister of appellant, who was also visiting Charmayne;

* Camille Gainer, sister of appellant, who also came to see Charmayne;

* Shadava Kizer ("Shadava"), who, along with her children S. and D.B., were visiting Shadava's sister, Shalanda, who resided at the apartment complex;

* Harrison and Heard, friends of Shadava, who were in Harrison's vehicle;

* Dalilia Wright, who along with her daughter, A.Y., went to the apartment complex to visit Shadava; and

* Tiffany Jones, a friend of Shadava's, who was at the apartment complex just to "hang out."

{¶ 3}  On the day in question, Charmayne had arrived home from work to observe Shadava's vehicle in the parking lot. Charmayne testified that her daughter had previously been bullied by Shadava's daughter and niece. She had complained to the leasing office of the apartment complex, and Shadava had been banned from the premises.

{¶ 4}  Charmayne took pictures of the vehicle and informed the leasing office. Charmayne was able to overhear Shadava and her friends yelling about "busting out [Charmayne's] windows." She called her sister Camille to inform her of what was happening. Chauntrice was present with Camille and said that they were on their way. Shortly thereafter, Camille and Chauntrice arrived, along with appellant and several

of Chauntrice's friends. Subsequently, appellant's friend Tyler and another friend known as "Nephew" also arrived at the apartment complex.

{¶ 5} They all gathered inside Charmayne's apartment and then decided to go outside. A fight broke out between the people who gathered with Charmayne and Shadava and her friends. Charmayne testified that she observed a man hit Chauntrice and that appellant had seen this as well, which caused appellant to jump into the fight. Charmayne further stated that she saw a man in pink pants, who was in a silver vehicle, begin shooting, which caused her, appellant, and several others to retreat into the apartment building. While in the building, Charmayne retrieved her firearm, a 9 mm Ruger, and went back outside. She then fired one shot toward Shadava. Photographs and video footage from the scene depicted appellant walking toward the silver vehicle, along with Chauntrice and Nephew, with a firearm in appellant's hand. Charmayne did not see appellant fire the weapon that day but testified that he told her the next day that he had also fired his weapon.

{¶ 6} The crowd dispersed and police arrived. Charmayne did not tell the officers that she had shot her weapon.

{¶ 7} Charmayne then hired an attorney for herself and appellant. She arranged for the two of them, along with Chauntrice, to meet with the attorney; however, appellant did not attend. A second meeting was held where appellant did attend. Chauntrice secretly made a recording of this meeting, which was played at trial. Charmayne testified that after the meeting, she learned that appellant and Chauntrice were attempting to blame her for Heard's murder. She then met with homicide detectives and turned over her firearm, along with two magazines, her case, and ammunition. The police were able to see that one bullet and casing were missing from her container of ammunition.

{¶ 8} Harrison testified that on the day in question, he and Heard had visited a liquor store and then drove to meet Shadava at the apartment complex. He and Heard were in his vehicle, a silver Chrysler Sebring, smoking a blunt of marijuana and drinking alcohol when they heard yelling by Shadava's vehicle. He then observed several people coming out to the parking lot from the apartment complex. Harrison stated that he was aware of a feud involving Shadava.

{¶ 9} Harrison exited the vehicle with his firearm in hand; Heard remained inside the vehicle. He identified himself in the video as shooting three warning shots into the air. He then returned to his vehicle, when Heard yelled at him to drive away and Harrison heard a gunshot. The video depicted an individual wearing a gray hat walking toward Harrison's car with a firearm, a .380-caliber handgun, in his hand. Heard fell into Harrison's lap, who then drove to Euclid Hospital for help. Harrison spoke to officers at the hospital and was arrested for his involvement with the incident.

{¶ 10} Harrison admitted to detectives that he fired his weapon during the altercation. He was subsequently charged with two counts of felonious assault with one- and three-year firearm specifications, one count of aggravated riot with one-and three-year

firearm specifications, and one count of improperly handling a firearm in a motor vehicle. Prior to his testimony, Harrison accepted a plea to one count of attempted felonious assault with firearm specifications, aggravated riot, and improperly handling a firearm in a motor vehicle.

{¶ 11} Cleveland Police Sgt. Aaron Reese was assigned to investigate Heard's death. Sgt. Reese responded to the scene and spoke with building management who provided him with several photographs of the parking lot that they had received from Charmayne on the day of the shooting. Sgt. Reese also obtained and reviewed two cell phone videos that captured the events in question. Sgt. Reese further explained that after reviewing the video evidence and DNA reports, he was able to identify appellant as the individual who was wearing the gray hat that had been recovered in the parking lot. After identifying appellant as a suspect, Sgt. Reese interviewed appellant at the homicide unit. This interview had been recorded and was played for the jury. Sgt. Reese testified that during his two-hour interview with appellant, appellant had told him approximately 20 times that he had only fired one shot during the altercation. Sgt. Reese testified that at the end of the interview, appellant had changed his story and admitted that he had fired a second shot.

{¶ 12} Edward Lattyak ("Lattyak"), the firearms and tool mark section supervisor for the Cuyahoga County Medical Examiner's Crime Laboratory, also testified on behalf of the state. Lattyak testified that, in connection with this investigation, he received for testing a total of six spent or discharged shell casings, three of which were 9 mm caliber and the other three were .380-caliber. Lattyak also received two firearms for examination and comparison: one .380-caliber firearm and one 9 mm Ruger. Based upon his examination, Lattyak concluded that the three .380-caliber spent shell casings were fired from the .380-caliber firearm that was submitted under this investigation. Lattyak testified that when he examined the three 9 mm casings, he observed that each one of them was from a different brand — CBC, Frontier, and RP. Lattyak testified that he compared the three spent 9 mm casings recovered from the scene to the submitted 9 mm Ruger and concluded that only one, the 9 mm CBC brand casing, was fired from that firearm. Lattyak further determined that the other two spent 9 mm casings were not discharged by either of the two submitted firearms, but they were discharged from the same unrecovered firearm.

{¶ 13} Cleveland Police Officer Dan McCandless testified that he had arrived on the scene at the apartment complex and observed shell casings in the parking lot. Officer McCandless was then dispatched to Euclid Hospital for an individual with gunshot wounds. When he arrived at the hospital, he observed several Euclid police officers standing around a silver vehicle located by the main entrance of the hospital ER. A black male was sitting on the curb by the vehicle. Officer McCandless spoke with this individual, who was identified as Harrison. As he spoke with Harrison, he learned that he and the nearby vehicle had been involved in the incident at the apartment complex at 16151 Lakeshore Boulevard.

(ECF No. 6-1, Exhibit 19); *State v. Hill*, No. 109727, 2021 WL 3928990, 2021-Ohio-

3028 (8th Dist. Sept. 2, 2021).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Conviction</u>

On June 12, 2019, Mr. Hill was indicted on the following offenses: (1) one unspecified-felony count of murder in violation of R.C. § 2903.02(A); (2) one unspecified-felony count of murder in violation of R.C. § 2903.02(B); (3) one second-degree felony count of felonious assault in violation of R.C. § 2903.11(A)(2); (4) one first-degree felony count of involuntary manslaughter in violation of R.C. § 2903.04(A); (5) one fifth-degree felony count of aggravated riot in violation of R.C. § 2917.02(A)(3); and (6) one third-degree felony count of having weapons while under disability in violation of R.C. § 2923.13(A)(3). (ECF No. 6-1, Exhibit 1). All counts except the having weapons while under disability charge also carried one- and three-year firearm specifications. *Id*. On June 17, 2019, Mr. Hill pled not guilty to all charges. (ECF No. 6-1, Exhibit 2).

On November 20, 2019, the State filed a motion for an evidentiary hearing regarding whether Mr. Hill had waived the attorney-client privilege with respect to a conversation he and his two sisters had with an attorney and that one of Mr. Hill's sisters, Chauntrice Hill, recorded. (ECF No. 6-1, Exhibit 3). On December 20, 2019, the trial court held that the attorney-client privilege was waived. (ECF No. 6-1, Exhibit 4).

The case proceeded to trial. On the first day of trial, Mr. Hill waived his right to trial by jury with respect to the charge of having weapons while under disability (Count Eighteen). (ECF No. 6-1, Exhibit 6). At the conclusion of the State's case, Mr. Hill made a motion for a judgment of acquittal pursuant to Ohio Criminal Rule 29, which the trial court denied. (ECF No. 6-1, Exhibit 11). Mr. Hill renewed the motion at the close of the defense's case, which the trial court again denied. *Id*.

On March 3, 2020, the trial court found Mr. Hill guilty of having weapons while under disability, while the jury convicted Mr. Hill on the remaining charges. (ECF No. 6-1, Exhibit 13). On April 17, 2020, the trial court sentenced Mr. Hill to aggregate sentence of 20 years to life. (ECF No. 6-1, Exhibit 15).

### B.  Direct Appeal

On May 13, 2020, Mr. Hill, through counsel, timely filed a notice of appeal to the Eighth District Court of Appeals. (ECF No. 6-1, Exhibit 16). On April 19, 2021, Mr. Hill filed his appellate brief, raising the following assignments of error:

1.  The trial court erred by denying the Criminal Rule 29 motion because the murder and felonious assault convictions were not supported by sufficient evidence as to the element of causation and the mental state of "knowingly."

2.  The trial court erred by denying the Criminal Rule 29 motion because the conviction for involuntary manslaughter was not supported by sufficient evidence as to the element of causation.

3.  The convictions for murder and felonious assault are against the manifest weight of the evidence as causation and mens rea were not proven beyond a reasonable doubt.

4.  The conviction for involuntary manslaughter is against the manifest weight of the evidence because the evidence failed to prove beyond a reasonable doubt that Defendant caused the death of the victim.

(ECF No. 6-1, Exhibit 17).

On September 2, 2021, the Eighth Appellate District affirmed Mr. Hill's convictions. (ECF No. 6-1, Exhibit 19).

### C.  Ohio Supreme Court

On February 18, 2022, Mr. Hill, through new appellate counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 6-1, Exhibit 20). Mr. Hill also filed a motion for leave to file a delayed appeal, which the Ohio Supreme Court granted on April 12, 2022. (ECF No. 6-1, Exhibits 21, 23). On May 12, 2022, Mr. Hill filed his memorandum in support

of jurisdiction, raising the following propositions of law:

1. When the State fails to prove beyond a reasonable doubt that the defendant actually caused harm to the victim, any resulting conviction must be reversed as it is against the manifest weight of the evidence in violation of a defendant's right to fair trial and due process.

2. A defendant's right to due process is violated when a trial court denies his motion for acquittal pursuant to Crim.R. 29 when there is insufficient evidence to demonstrate the defendant actually caused the harm to the victim to sustain a conviction.

(ECF No. 6-1, Exhibit 24). On July 19, 2022, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 6-1, Exhibit 25).

### D.  Petition for Post-Conviction Relief

On September 4, 2020, Mr. Hill, through counsel, filed a petition for post-conviction relief in the trial court pursuant to R.C. § 2953.21, arguing that he received the ineffective assistance of trial counsel because his counsel failed to call witnesses who would have testified that Mr. Hill did not shoot the victim. (ECF No. 6-1, Exhibit 26). Mr. Hill filed his petition again on September 15, 2020. (ECF No. 6-1, Exhibit 27). On March 19, 2021, the trial court denied both petitions. (ECF No. 6-1, Exhibit 31). Mr. Hill did not appeal the trial court's decision.

### E.  Federal Habeas Action

On November 18, 2022, Mr. Hill, through counsel, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Hill's habeas petition raises a single ground for relief:

1. The conviction was based on legally insufficient evidence which resulted in a violation of Petitioner's right to due process.

*Id*.

The Warden filed an answer/return of writ on March 16, 2023. (ECF No. 6). Mr. Hill filed a traverse on June 16, 2023. (ECF No. 8).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Hill, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Hill's § 2254 petition.

### B. <u>Exhaustion and Procedural Default</u>

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue

at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous" —it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013)

(quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS

### A.  <u>Ground One: Sufficiency of the Evidence</u>

In his sole ground for relief, Mr. Hill argues that the evidence was insufficient to support his convictions for murder, involuntary manslaughter, and felonious assault because

the evidence did not establish that Mr. Hill fired the shot that killed the victim.[1]

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Review of sufficiency of the evidence challenges involves "a double layer of deference[.]" *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). "First, [a court] must view the evidence in the light most favorable to the prosecution, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App'x 470, 476 (6th Cir. 2013) (quoting *Jackson*, 443 U.S. at 319). "Second, 'even were [a court] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [a court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown,* 567 F.3d at 205). Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

---

[1] Mr. Hill did not specify in his petition or his supporting brief which counts his sufficiency of the evidence claim relates to. In his traverse, he argues only that the evidence was insufficient with respect to the murder, involuntary manslaughter, and felonious assault counts. (ECF No. 8, PageID # 1503).

The Eighth Appellate District rejected Mr. Hill's sufficiency of the evidence claim on the merits, holding as follows:

{¶ 18} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of the evidence require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 19} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶ 20} In support of his argument regarding causation, appellant asserts that there were three shooters — Charmayne, Harrison, and himself — and that which person actually fired the round that killed Heard was not proven beyond a reasonable doubt. In addition, appellant contends that Harrison was intoxicated and testified that he shot three times "into the air"; however, another witness testified that Harrison fired four shots. Finally, appellant further argues that the forensic testimony failed to show that he fired the bullet that caused Heard's death.

{¶ 21} The state argues that appellant's argument that it is unknown who fired the fatal shot ignores the timing of the shots, as evidenced by testimony and videos of the incident. Harrison's three shots into the air occurred before he was in the vehicle with Heard. Harrison initially fired his weapon, a .380-caliber firearm, into the air to disperse the fighting crowd. He then went back to his car where Heard was sitting and started to drive away. While attempting to drive out of the parking lot, Harrison heard a gunshot, and Heard fell over into his lap.

{¶ 22} With regard to the possibility of Charmayne as Heard's shooter, Charmayne testified and admitted she fired one shot from her weapon, a 9 mm Ruger, in the direction of Shadava's vehicle. Charmayne testified that Harrison's silver Sebring was initially parked near Shadava's vehicle, but later moved further down. Charmayne's shell casing was found furthest from where Heard was shot.

{¶ 23} The state also asserts that a total of six spent shell casings and two live rounds of ammunition were found on scene during the investigation. Three of the six casings were .380-caliber and the remaining three were 9 mm caliber. Based on this evidence, the state maintains that the three warning shots fired by Harrison are accounted for.

Further, Charmayne admitted to firing one of the 9 mm shots. According to testimony from the firearms and tool mark section supervisor for the Cuyahoga County Medical Examiner's Crime Laboratory, three spent 9 mm casings were recovered from the scene, but only one, the 9 mm CBC brand casing, was fired from the 9 mm Ruger recovered from Charmayne. The other two 9 mm casings, although two different brands, were determined to have been discharged from the same unrecovered firearm. These other two shell casings were found closest to the location where the victim was killed. According to Sgt. Reese's testimony, appellant stated approximately 20 times that he had only fired one shot during the altercation. However, at the end of the interview with Sgt. Reese, appellant admitted that he had fired a second shot.

{¶ 24} While appellant argues that the forensic evidence did not prove that he fired the fatal shot, we note that Ohio law does not require forensic evidence to sustain a conviction. "This court has long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

{¶ 25} Viewing the evidence in a light most favorable to the state, as we must, we find that sufficient evidence existed to prove that appellant was responsible for the shot fired from the unrecovered gun in the direction of Harrison's vehicle, which struck and killed Heard. We therefore hold that the trial testimony and video footage were sufficient for a rational trier of fact to find the causation element was proven in appellant's convictions for murder, felonious assault, and involuntary manslaughter.

{¶ 26} Appellant further contends that his convictions for murder and felonious assault were not supported by sufficient evidence with regard to the mental state of "knowingly." However, we find that appellant's brief did not present any argument or authority in support of this proposition. App.R. 16(A) requires a party to separately argue each assignment of error, and under App.R. 12(A)(2), an appellate court may disregard any assignment of error, or portion thereof, if the appellant fails to make a separate argument. *Cleveland v. Taylor*, 8th Dist. Cuyahoga No. 109371, 2021-Ohio-584, ¶ 87, citing *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 55.

{¶ 27} Accordingly, because appellant failed to present any argument or citations to authority with regard to the knowingly element of his murder and felonious assault convictions, these assertions shall be disregarded.

{¶ 28} Appellant's first and second assignments of error, related to sufficiency of the evidence, are overruled.

(ECF No. 6-1, Exhibit 19).

Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, I

agree that a rational trier of fact could have found the essential elements of the relevant

offenses beyond a reasonable doubt. Mr. Hill argues that no witness testified to seeing him fire the shot that killed the victim. Mr. Hill further argues that the State did not present any forensic evidence establishing that he fired the fatal shot. However, while no witnesses testified that they saw Mr. Hill shoot the victim, photographs, video evidence, and witness testimony established Mr. Hill walked toward the vehicle the victim was in while carrying a gun. Mr. Hill's sister also testified that Mr. Hill admitting to firing a shot during the incident, while Sergeant Reese testified that Mr. Hill ultimately admitted to firing two shots. In addition, the State presented forensic evidence from which the jury could conclude that the fatal shot did not come from the firearm of either Mr. Harrison or Ms. Gainer.

On habeas review, a reviewing court's task is merely to "assess whether the jury could 'draw reasonable inferences' from the evidence to establish the relevant element[s] of the crime." *James v. Corrigan*, 85 F.4th 392, 396 (6th Cir. 2023) (quoting *Coleman v. Johnson*, 566 U.S. 650, 655 (2012)). The Eighth Appellate District did not err in holding that the witness testimony, along with the photographic, video, and forensic evidence, was sufficient for the jury to infer that Mr. Hill fired the fatal shot. *See Salters v. Burt*, No. 17-2426, 2018 WL 2341746, at *3 (6th Cir. May 23, 2018) (holding that it was reasonable for jury to infer that petitioner pulled trigger, although victim did not see who fired gun, where victim testified that petitioner pointed gun at him and victim was shot only eight seconds later, stating that "[c]ircumstantial evidence alone . . . is sufficient to sustain a conviction, and such evidence need not remove every reasonable hypothesis but that of guilt").

And even if I had concluded (which I do not) that a rational trier of fact could not have found Mr. Hill guilty beyond a reasonable doubt, on habeas review I must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *White*, 602

F.3d at 710. Applying the second layer of the "double layer of deference," I do not find the state appellate court's sufficiency determination unreasonable for the reasons set forth above. I therefore recommend that the Court dismiss and/or deny Mr. Mr. Hill's sole ground for relief.[2]

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

---

[2] During his appeal to the Eighth Appellate District, Mr. Hill argued that, in addition its alleged failure to prove that he fired the shot that killed the victim, the State also failed to prove that he acted "knowingly." (ECF No. 6-1, Exhibit 17). Mr. Hill has not raised that argument in this proceeding, and therefore has waived it. *See Garner v. Fender*, No. 1:19-CV-02453-JPC, 2022 WL 19406554, at *14 n.2 (N.D. Ohio Dec. 14, 2022), *report and recommendation adopted*, 2023 WL 2966072 (N.D. Ohio Apr. 10, 2023) (failure to raise argument in initial brief waives the issue) (citing *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)). Regardless, to the extent Mr. Hill has attempted to raise a sufficiency of the evidence claim with respect to the "knowingly" element, I agree with the Warden that Mr. Hill procedurally defaulted on the argument because he failed to fairly present it to the Eighth Appellate District and failed to raise it before the Ohio Supreme Court, and because Mr. Hill has failed to establish that grounds exist to excuse the default. (ECF No. 6-1, Exhibit 19, ¶¶ 26-27, Exhibit 24; *O'Sullivan*, 526 U.S. at 845; *Coleman*, 501 U.S. at 750).

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id*.; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].". In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. <u>Analysis</u>

Mr. Hill has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Hill's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability.

Dated:  October 3, 2024

*Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same

argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).